## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| TERESA TITUS, as an individual and as a representative of the class,<br><br>                    Plaintiff,<br>v.<br><br>ZESTFINANCE, INC., BLUECHIP FINANCIAL, and DOUGLAS MERRILL,<br><br>                    Defendants. | CASE NO. 18-5373 RJB<br><br>ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION |

THIS MATTER comes before the Court on the Defendant BlueChip Financial's ("BlueChip") Motion to Compel Arbitration and to Dismiss or Stay Proceedings Herein (Dkt. 27), Defendants ZestFinance, Inc., and Dougals Merrill's (collectively "Zest") Motion to Compel Arbitration (Dkt. 30), and BlueChip's Objection to and Motion to Strike Improper Surreply Brief Filed by Plaintiff (Dkt. 43). The Court has considered the pleadings filed regarding the motions, the remaining filed and oral argument on 11 October 2018.

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 1

This putative class action arises from a series of loans Defendants made to Plaintiff, which Plaintiff alleges carry triple digit interest rates (sometimes exceeding 400%), that violate Washington State usury law, RCW 19.52.030, the Washington Consumer Protection Act, RCW 19.86.020, *et seq.* ("WCPA"), and unjustly enriches Defendants. Dkt. 1. Plaintiff also makes a claim against Defendants for violation of Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962, *et seq.* ("RICO"), asserting that the Defendants "associated for the common purpose of profiting off of the collection [of] unlawful debt by offering and collecting on loans to consumers throughout the United States . . ." Dkt. 1, at 18.

Defendants now move to compel arbitration. Dkts. 27 and 30. For the reasons provided below, the motions (Dkts. 27 and 30) should be denied.

I. **FACTS, FACTUAL ANALYSIS, AND PENDING MOTIONS**

In her Complaint, Plaintiff alleges that Defendant BlueChip "is purportedly a tribal corporation . . . incorporated under the laws of the Turtle Mountain Band of Chippewa Indians" ("Tribe"). *Id.,* at 9. Plaintiff alleges that "in an effort to avoid state usury laws," Defendant Zest affiliated with the Tribe, and directed the Tribe to create BlueChip, "to serve as a front to disguise" Zest's role in making usurious loans. *Id.*, at 6.

In December of 2015, Plaintiff applied online for, and received, a loan of $800.00 from BlueChip (doing business as Spotloan). Dkt. 28-1, at 4-10. The loan had an annual interest rate of 390%. *Id.* Plaintiff applied for and received three additional loans from BlueChip: in June of 2016 ($600), November 2016 ($800), and April 2017 ($800), with annual interest rates ranging from 420% to 460%. Dkt. 28-1, at 16-22, 28-34, and 40-46.

Each time Plaintiff received a loan from BlueChip, she electronically signed a document entitled "Loan Agreement." Dkt. 28-1, at 4-10, 16-22, 28-34, and 40-46. A copy of this "Loan

Agreement" is attached to this Order as Exhibit A. These loan agreements are not the model of clarity. As is relevant here, each of the Loan Agreements provides that:

> **Disputes.** Any dispute under this Agreement will be decided under the terms set forth in the Binding Arbitration and Jury Trial Waiver below unless you decide to opt out. . .
>
> **Governing Law**. Spotloan is organized under the laws of the Turtle Mountain Band of Chippewa Indians (the "Tribe"). Your Loan Agreement becomes a binding contract with us when we accept it at our offices on the Turtle Mountain Indian Reservation. By signing this Loan Agreement, you agree that the laws of the Tribe will apply to the Loan Agreement, and understand that United States state law does not apply to the Loan Agreement in any way. You also agree to be subject to the jurisdiction of the Tribe. . .

Dkt. 28-1, at 5, 9, 17, 21, 29, 33, 41 and 45. The Loan Agreements are internally inconsistent. While the "Governing Law" provision provides that "state law does not apply to the Loan Agreement in any way," later, the "Binding Arbitration Clause and Jury Trial Waiver," provides that "[i]f a court finds that [the Federal Arbitration Act ("FAA")] doesn't apply, and the finding can't be appealed, then your state's law governs. . ." and that "[a] party may file the Arbiter's award with the Washington state court for enforcement against any party." Dkt. 28-1, at 5-7, 17-19, 29-31, and 42-43. So, state laws do apply to the contract in some ways.

In the "Binding Arbitration Clause and Jury Trial Waiver," the following appears: "[t]he arbiter must apply substantive law consistent with the FAA. The Arbiter must follow statutes of limitation and privilege claims. . ." Dkt. 28-1, at 6, 18, 30 and 41. The contract is silent on whether those provisions refer to tribal law, federal law, or state law.

Under the heading, "Fair Lending Policy Statement" the Loan Agreements states, that BlueChip "is providing you the following information in a manner consistent with principles under applicable United States federal law." It further provides:

> It is [BlueChip's] policy to make credit products and loan support services available to all qualified applicants without discriminating on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant is of legal age and has the legal capacity to enter into a binding contract), veteran status, disability, genetics, sexual orientation, gender identity, gender expression, or any other status or condition protected by law; income derived from any public assistance program; or the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. We will not discourage a consumer from making or pursuing an application for credit on a prohibited basis. [BlueChip] treats all consumers in a fair, equitable, and consistent manner on an equal opportunity basis.

Dkt. 28-1, at 9, 21, 32-33, and 45. This statement does not give authority to bring suit under any federal law, and appears to be only a non-discrimination and anti-retaliation aspirational statement.

The next clause of the Loan Agreements entitled, "Transfer of Rights/Maintenance of Register," states:

> We may assign or transfer this Agreement, or any of our rights, without notice or your consent. This Agreement shall remain exclusively subject to the laws and courts of the Turtle Mountain Band of Chippewa Indians.

Dkt. 28-1, at 9, 21, 33, and 45.

The "Binding Arbitration Clause" requires arbitration of any disputes, and specifically waives many rights that are inconsistent with the arbitration clause and the Loan Agreement. It contains an opt-out provision that the Plaintiff did not invoke.

Construing the contract as a whole, giving meaning to each provision, it appears that the intent of the contract is that the Turtle Mountain Band of Chippewa Indians law applies, to the exclusion of federal and state law, except where those laws are specifically mentioned as

applying to the contract. Specifically or by implication all other state and federal laws are waived, including those referenced in the "Fair Lending Policy Statement" aspirational paragraph.

Defendants BlueChip and Zest now move for an order compelling Plaintiff to arbitrate. Dkts. 27 and 30. BlueChip argues that: the arbitration clause is valid and enforceable, Plaintiff's claims fall squarely within the arbitration clause, and Plaintiff's claims must proceed to arbitration on an individual basis, and so the case should be dismissed or stayed pending completion of arbitration. Dkt. 27. Zest argues that it is a third-party beneficiary of the arbitration agreements, Plaintiff is equitably estopped from refusing to arbitrate her claims against Zest even though Zest is a non-signatory to the Loan Agreements, and maintain that arbitration must proceed on an individual basis. Dkt. 30.

The Plaintiff opposes the motions and argues that the arbitration agreement is unenforceable because the only reasonable construction of the contract is that it implicitly forbids the application of state and federal law. Dkt. 36. She asserts that the contract is invalid because it prospectively waives a consumer's state and federal statutory rights under the "effective vindication" exception to arbitration. *Id.* The effective vindication exception "serves to harmonize competing federal policies" by allowing courts to invalidate arbitration agreements that "operate as a waiver of a party's right to pursue statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). Plaintiff further maintains that the Defendants' effort to force this arbitration demonstrates how the contract is designed to circumvent federal and state law and is invalid, and so the motion should be denied. Dkt. 36.

BlueChip replies, and argues that arbitration should be compelled because the "effective vindication" exception does not apply here because it only applies to the waiver of federal rights

and the Agreements permit the application of federal law, the Agreements indicate the certain federal law applies, Plaintiff relies on one sentence, taken out of context, and the loan website clarifies that they "comply with applicable tribal lending laws and federal lending laws that do not conflict with our Tribe's sovereignty." Dkt. 39.

Zest replies, and joins in BlueChip's arguments. Dkt. 40. It argues, additionally, that the arbitrator must decide the choice of law applicable to Plaintiff's loan agreements and even if the choice of law provision is invalid, the proper remedy is that the choice of law provision should be severed and the agreement to arbitrate remains. *Id.*

On September 28, 2018, the Plaintiff filed a surreply (Dkt. 42) and on October 1, 2018, BlueChip filed a motion to strike Plaintiff's surreply, asserting that the arguments Plaintiff makes are responses to arguments in the replies and not proper under the Local Rules of the Western District of Washington (Dkt. 43).

This opinion will first address BlueChip's motion to strike Plaintiff's surreply. Dkt. 43. It will then address the motions to compel arbitration (Dkts. 27 and 30) and whether the exception to the general policy favoring arbitration – the effective vindication exception - applies.

## II. DISCUSSION

### A. MOTION TO STRIKE

Under Local Rule of W.D. Wash. 7 (g),

> Requests to strike material contained in or attached to submissions of opposing parties shall not be presented in a separate motion to strike, but shall instead be included in the responsive brief, and will be considered with the underlying motion. The single exception to this rule is for requests to strike material contained in or attached to a reply brief, in which case the opposing party may file a surreply requesting that the court strike the material, subject to the following:

(1) That party must file a notice of intent to file a surreply as soon after receiving the reply brief as practicable.

(2) The surreply must be filed within five days of the filing of the reply brief, and shall be strictly limited to addressing the request to strike. Extraneous argument or a surreply filed for any other reason will not be considered. . .

BlueChip's motion to strike the Plaintiff's surreply (Dkt. 43) should be granted. In her surreply, the Plaintiff does not move to strike material contained in or attached to Defendant's reply briefs, but substantively responds to arguments in the Defendants' reply briefs. Accordingly, the Plaintiff's surreply (Dkt. 42) will not be considered.

### B. STANDARD ON MOTIONS TO COMPEL ARBITRATION

The FAA establishes "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Under section two of the FAA, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 "The final clause of § 2, generally referred to as the savings clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017)(*internal quotation marks and citations omitted*). The FAA's primary purpose is that "of ensuring that private agreements to arbitrate are enforced according to their terms." *Munro v. Univ. of S. California*, 896 F.3d 1088, 1092 (9th Cir. 2018). Generally, "[e]ven claims arising under a statute designed to further important social policies may be arbitrated because, so long as the prospective litigant effectively may vindicate [their federal] statutory

cause of action in the arbitral forum, the statute serves its functions." *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 90 (2000)(*internal quotation marks and citation omitted*).

"Under the FAA, the basic role for courts is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564–65 (9th Cir. 2014). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017)(*internal quotation marks and citations omitted*).

The arbitration clauses of the Loan Agreements here are enforceable unless the "effective vindication" exception applies.

### C. VALIDITY OF THE AGREEMENT TO ARBITRATE AND THE "EFFECTIVE VINDICATION" EXCEPTION

The policy favoring arbitration does not, however, "extend to a substantive waiver of federally protected statutory rights in an arbitration agreement." *Hayes v. Delbert,* 811 F.3d 666 (4th Cir. 2016). Under the "effective vindication" exception, arbitration agreements that "operate as a prospective waiver of a party's right to pursue statutory remedies" are invalid under the FAA's § 2 "public policy grounds." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013); *Mohamed v. Uber Technologies, Inc.,* 8484 F.3d 1201, 1213 (9th Cir. 2016); *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013)(holding administrative and filing cost of arbitration precluded the effective vindication of the plaintiff's statutory rights and so, the arbitration agreement was invalid). In the event the choice-of-forum and choice-of-law clauses operate "in tandem as a prospective waiver of a party's right to pursue statutory remedies," the agreement is invalid "as against public policy." *Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc.*, 473 U.S. 614, 637, n. 19 (1985). Accordingly, an agreement that is "a

substantive waiver" of federal statutory rights will not be upheld. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009).

The Defendants' motions to compel arbitration (Dkts. 27 and 30) should be denied. Their choice-of-forum and choice-of-law clauses "operate as a prospective waiver of a party's right to pursue [federal] statutory remedies" and so the arbitration clause is invalid. Being mindful that a contract is to be interpreted "as a whole and every part . . . with reference to the whole," and that "[t]he various provisions of a contract or statute must be so construed (if possible) as to give force and effect to every part thereof,"(*Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1045 (9th Cir. 2015)(*internal quotation marks and citations omitted*)), the only reasonable way to interpret the Loan Agreement is to conclude that Tribal law applies, barring application of federal law except where it is expressly included. By implicitly excluding all other federal law, there is an implicit, prospective waiver of federal rights.

While the Defendants assert that this construction is improbable given the contract's reference to other federal laws, that argument is not persuasive. If mere reference to a federal law was sufficient to save the contract, then it would render the "effective vindication" exception meaningless.

The Defendants argue that the Defendants' website says that federal law applies. The Defendants point to no authority that an alleged statement on a website somehow saves this contract.

In 2016, the Fourth Circuit Court of Appeals considered a situation similar (although not exactly) like the case at bar. *Hayes v. Delbert,* 811 F.3d 666 (4th Cir. 2016). In *Hayes*, the Plaintiff took out a payday loan from a lender owned by a member of the Cheyenne River Sioux Tribe. *Id.* Hayes signed a loan agreement which provided, in part:

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 9

> This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation. By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

*Id.*, at 670. The loan agreement in that case also contained an agreement to arbitrate, which permitted the borrower to select the AAA or JAMS to administer the arbitration. *Id.* The Fourth Circuit held that "[t]his arbitration agreement fails for the fundamental reason that it purports to renounce wholesale the application of any federal law to the plaintiffs' federal claims." *Id.* The *Hayes* Court noted that, "while the Court has affirmed [that] the FAA gives parties the freedom to structure arbitration in the way they choose, it has repeatedly cautioned that this freedom does not extend to a substantive waiver of federally protected civil rights in an arbitration agreement." *Id.,* at 674 (*internal citations omitted*). It continued, "the arbitration agreement here almost surreptitiously waives a potential claimant's federal rights through the guise of a choice of law clause." *Id.,* at 675. "This arbitration agreement uses its choice of law provision to waive all of a potential claimant's federal rights." *Id.* "Because the arbitration agreement takes this plainly forbidden step," the arbitration agreement was held "invalid and unenforceable." *Id.*

Like the agreement in *Hayes*, the arbitration agreement here uses a choice of law provision, which, when construed with the other provisions in the Loan Agreement, prospectively waives most federal statutory remedies. Although the language in this case is not as specific as it was in *Hayes*, it implicitly achieves the same results. *See Dillion v. BMO Harris Bank, N.A.,* 856 F.3d 330 (4th Cir. 2017) (holding arbitration clause in another internet payday loan agreement (involving a tribal lender), which declared that tribal law applied and that state and federal law did not apply, was invalid). The choice of forum – arbitration - "surreptitiously

waives a potential claimant's federal rights through the guise of a choice of law clause." *Hayes,* at 675; *Dillion,* at 336. Where an arbitration clause compels the surrender of federal statutorily mandated rights, the arbitration clause contravenes the federal statute at issue, and so the arbitration clause is invalid. *Graham Oil Co. v. ARCO Products Co.,* 43 F.3d 1244, 1248 (9th Cir. 1994)(holding that an arbitration clause that forced forfeiture of the federal statutory right to recover exemplary damages, the right to recover attorneys' fees, and reduced the applicable statute of limitations was invalid). Accordingly, the agreement to arbitrate here should be held to be invalid and unenforceable.

Zest raises two new arguments in its reply. Although ordinarily the Court does not consider new arguments raised for the first time in the reply, it will address these two arguments for the sake of finality.

First, Zest argues that the arbitrator, rather than the Court, should decide if the choice of law clause is invalid. Dkt. 40. Zest cites *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) for the proposition that: "an arbitration provision is severable from the remainder of the contract . . . [and] unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instant." Dkt. 40. The Court in *Buckeye* held that because the plaintiff was asserting that the contract as a whole was unconscionable due to the usury interest rates it charged on a loan, and not asserting that the arbitration clause itself was unconscionable, the arbitrator should make the decision as to the validity of the contract.

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Further, in the Ninth Circuit, "[t]he

question of arbitrability is for the court to decide regardless of whether the specific challenge to the arbitration clause is raised as a distinct claim in the complaint so long as the plaintiff's challenge to the validity of an arbitration clause is a distinct question from the validity of the contract as a whole." *Smith v. Jem Grp., Inc.*, 737 F.3d 636, 639 (9th Cir. 2013). Plaintiffs need not plead the validity or invalidity of an arbitration clause in their complaint; it is "sufficient that they raised that issue in their response to the motion to compel." *Id.*, at 640.

The arbitration agreement is invalid here because creates a conflict between the FAA's requirement that contracts to arbitrate are to be enforced on their terms and the enforcement provisions of federal statutes that Plaintiff could not now, under the contract, pursue - like her RICO claim. Plaintiff's core arguments in her Response go to the delegation clause of the arbitration agreement and the arbitration agreement itself. These facts are sufficient in the Ninth Circuit to justify the Court deciding the question of arbitrability. *Smith,* at 640. Moreover, "a federal court has a duty to determine whether a contract violates federal law before enforcing it." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982). This Court should determine whether the arbitration clause here is valid, not an arbitrator.

Second, Zest asserts that even if the choice of law provision is invalid, the proper remedy is that the choice of law provision should be severed and the agreement to arbitrate remains. Dkt. 40.

The *Hayes* court considered and rejected this argument. It held that the agreement's "errant" provisions were not severable. *Hayes,* at 675. The Fourth Circuit noted that:

> It is a basic principle of contract law that an unenforceable provision cannot be severed when it goes the "essence" of the contract. Here, the offending provisions go to the core of the arbitration agreement. It is clear that one of the animating purposes of the arbitration agreement was to ensure that [the Tribal lender] and its allies could engage in lending and collection practices free from the strictures of any federal law.

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 12

> And although our focus must be on the arbitration agreement, not the underlying loan agreement, it is only natural for us to interpret the arbitration agreement in light of the broader contract in which it is situated. As noted above, provisions in the loan agreement starkly proclaim that "no United States state or federal law applies to this Agreement." The brazen nature of such statements confirms that [the lender's] arbitration agreement is little more than an attempt to achieve through arbitration what Congress has expressly forbidden.

*Id.*, at 675-676.

Similarly, in finding another payday loan agreement with a tribal lender that contained a forum selection clause was "an integral, non-severable part of the arbitration agreement," the Third Circuit concluded that the entire arbitration agreement was unenforceable. *MacDonald v. CashCall, Inc*, 883 F.3d 220, 232 (3rd Cir. 2018).

The Fourth and Third Circuits' reasoning is persuasive. The "offending provisions" of this arbitration agreement in this case go to the essence of the contract and are intended to "achieve through arbitration what Congress has expressly forbidden," *Hayes,* at 676, - that is a prospective waiver of federal statutory rights. "Good authority counsels that severance should not be used when an agreement represents an integrated scheme to contravene public policy." *Id.*

**D. CONCLUSION**

The Defendants' motions to compel arbitration (Dkts. 27 and 30) should be denied. The Defendants make reference to various other defenses, including a defense of sovereign immunity for BlueChip (as an entity of the Tribe) and a lack of personal jurisdiction as to the other Defendants. The Defendants did not move for dismissal on these grounds and they are not considered in this order.

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 13

### III. ORDER

It is **ORDERED** that,

- Defendant BlueChip Financial's motion to strike the Plaintiff's surreply (Dkt. 43) **IS GRANTED;** and

- Defendant BlueChip Financial's Motion to Compel Arbitration and to Dismiss or Stay Proceedings Herein (Dkt. 27) and Defendants ZestFinance, Inc., and Dougals Merrill's Motion to Compel Arbitration (Dkt. 30) **ARE DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 18th day of October, 2018.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge

ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION - 14